JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose Luis Koyoc, ) | CV 13-09165-RSWL (AGRx) |
| Plaintiff, ) | **ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY ACTION** [18] |
| v. ) | |
| Progress Financial Company ) and Does 1 to 10 inclusive, ) | |
| Defendants. ) | |

Currently before the Court is Defendant Progress Financial Company's ("Defendant") Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Action [18]. The Court, having reviewed all papers submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS**: The Court **GRANTS** Defendant's Motion.

**I.  BACKGROUND**

Plaintiff Jose Luis Koyoc ("Plaintiff") is a California resident who obtained a loan from Defendant.

1

Compl. ¶ 3. Defendant is a Delaware corporation in the business of making consumer loans, and is licensed to make loans in the state of California. Rodriguez Decl. ¶ 2.

On or about July 2, 2013, Plaintiff applied for a loan from Defendant. Rodriguez Decl. ¶ 4, Ex. A. On July 21, 2013, Defendant approved Plaintiff's application, and Plaintiff obtained a loan for $2,600.00. Id. at ¶ 5, Ex. B. Plaintiff signed various agreements governing his loan, including a Truth-in-Lending Disclosure and Loan Agreement ("Loan Agreement"), an Arbitration Agreement, and a Disclosures and Acknowledgments for Customers document ("Consent Agreement"), (collectively, "Agreements"). Id.[1]

The Loan Agreement[2] sets forth the terms and conditions of Plaintiff's loan, including an agreement to be bound by the terms of the Arbitration Agreement.

---

[1] The Agreements signed by Plaintiff are in Spanish and are attached collectively as Exhibit B to the Rodriguez Declaration. English translations of the Agreements are attached collectively as Exhibit C to the Rodriguez Declaration.

[2] The Loan Agreement reads, in relevant part:
**15. Arbitration.** You acknowledge that you have read, understand, and agree to the terms contained in the Arbitration Agreement you are signing in connection with this Agreement. By entering into the Arbitration Agreement, you waive certain rights, including the right to go to court, to have a dispute heard by a jury, and to participate as part of a class of claimants relating to any claim against or dispute with us or a related third party . . . .
Rodriguez Decl. ¶¶ 5-6, 7, Exs. B-C.

1  Id. at ¶ 7, Exs. B-C.
2       The Arbitration Agreement[3] sets forth the
3  limitations of arbitration provisions.  Id. at ¶ 8,
4  Exs. B-C.  It also expressly obtains Plaintiff's
5  consent to arbitration and sets forth the scope of
6  Plaintiff's consent.  Id. at ¶ 8, Exs. B-C.
7       The Consent Agreement[4] sets forth the limitations
8  of Defendant's e-mail and phone communications with
9  Plaintiff regarding his loan.  Id. at ¶ 9, Exs. B-C.
10      Plaintiff alleges that he received several
11 telephone calls to his cell phone from Defendant in an

---

[3] The Arbitration Agreement reads, in relevant part:
> Any and all claims, controversies, or disputes arising out of or related in any way to that Truth-in-Lending Disclosure and Loan Agreement entered into by you and us on the same date as this Arbitration Agreement shall be subject to binding arbitration . . . [t]his includes, without limitation, (1) all issues concerning the transaction in connection with which this Arbitration Agreement has been executed . . . .

Rodriguez Decl. ¶¶ 5-6, 8, Exs. B-C.

[4] The Consent Agreement reads, in relevant part:
> **Authorization to be Called and to be Sent SMS Text Messages to Your Mobile Phone, and to Receive Electronic Communications**
> You agree that you will accept calls, SMS text messages, e-mails and other electronic communications from us regarding your loan application, your loan payments, the collection of your loan account, promotions and other important communications.  You understand these calls could be automatically dialed and a recorded message may be played.  You agree that we may leave a voicemail message on your mobile phone or send you a SMS text message to your mobile phone, which may include information about the delinquency status of your account. You agree that such calls and electronic communications will not be unsolicited calls for purposes of state and federal law.

Rodriguez Decl. ¶¶ 5-6, 9, Exs. B-C.

3

attempt to collect the debt owed on his loan. Compl. ¶¶ 7-10. Plaintiff claims that these calls were made with such frequency as to be unreasonable under the circumstances and to constitute harassment. Id. at ¶ 11.

Plaintiff claims that he received an unspecified number of calls from Defendant even after Plaintiff's attorney (1) requested that Defendant cease contacting Plaintiff and (2) requested that Defendant direct all future correspondences regarding Plaintiff to Plaintiff's attorney. Id. at ¶ 15.

Plaintiff further alleges that on or about September 19, October 3, October 24, and November 14, 2013, Defendant sent Plaintiff collection letters. Id. at ¶¶ 16-21, Exs. B-D, F.

Plaintiff maintains that the debt collection practices employed by Defendant were in violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Id. at ¶¶ 1, 34, 38.

As a result of Defendant's alleged violations, Plaintiff seeks actual and statutory damages, costs, and reasonable attorneys' fees.

On December 12, 2013, Plaintiff filed the Complaint against Defendant [1].

Defendant filed the instant Motion on March 17, 2014 [18]. Plaintiff filed an Opposition on March 25,

2014 [21].  Defendant filed a Reply on April 1, 2014 [22].  This matter was set for hearing on April 15, 2014, and was taken under submission on April 7, 2014 [23].

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As explained by the Supreme Court in Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1984), "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

Therefore, the FAA establishes a federal policy favoring arbitration of disputes and creates a rule of contract construction favoring arbitration.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25 (1991) (FAA manifests a "liberal federal policy favoring arbitration agreements"); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration . . . ."); Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 1996). The Act's purpose is to encourage arbitration and to permit parties who have agreed to arbitrate disputes to proceed without court-imposed delay.

In ruling on an application or petition to compel, the court may inquire only as to: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. Id.

The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91-92 (2000). Where the arbitration provision is broad, there is a heightened presumption in favor of arbitration such that the party resisting arbitration must show "forceful evidence of a purpose to exclude the claim from arbitration . . . ." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585 (1960)).

### III. ANALYSIS

**A. A Valid Agreement To Arbitrate Exists**

1    The Court finds that a valid, enforceable agreement
2 to arbitrate exists between the Parties.  Arbitration
3 agreements are generally presumed to be valid and
4 enforceable.  Chiron, 207 F.3d at 1130.  The party
5 seeking to avoid arbitration bears the burden of
6 demonstrating the arbitration agreement is invalid or
7 unenforceable.  Green Tree, 531 U.S. at 91.
8    Here, it is clear that Plaintiff signed the
9 Arbitration Agreement.  Rodriguez Decl. ¶¶ 5-6, Exs. B-
10 C.  By signing the Arbitration Agreement, Plaintiff
11 manifested assent to its terms.  Further, Plaintiff
12 expressly states that he does not dispute that he
13 signed a valid, enforceable agreement with Defendant
14 containing an agreement to arbitrate "[a]ny and all
15 claims, controversies, or disputes arising out of or
16 related in any way to that Truth-in-Lending Disclosure
17 and Loan Agreement . . . ."  Opp'n 5:1-5; Rodriguez
18 Decl. ¶¶ 5-6, 8, Exs. B-C.  Additionally, Plaintiff
19 does not dispute that the arbitration agreement
20 expressly covers "all issues concerning the transaction
21 in connection with which this Arbitration Agreement has
22 been executed . . . ."  Opp'n 5:6-8; Rodriguez Decl. ¶¶
23 5-6, 8, Exs. B-C.
24    While Plaintiff initially submits that the
25 Arbitration Agreement is valid and enforceable,
26 Plaintiff argues that nevertheless the Rosenthal Act
27 prohibits a waiver of rights to a jury trial and
28 "therefore the arbitration clause is void and

unenforceable." Opp'n 8:24; 9:25-10:2. Plaintiff points to Cal. Civ. Code §§ 1788.30(a), 1788.30(b), 1788.30(c), 1788.30(f)[5] and 1788.33[6] to support his argument that he is entitled to bring a suit "in any court of competent jurisdiction" for actual damages, a penalty, and reasonable attorneys' fees arising from the Rosenthal Act violations, and that these rights cannot be waived. Id. at 9:25-10:2.

The Court finds that the Rosenthal Act does not render the Arbitration Agreement void and unenforceable. First, Cal. Civ. Code §§ 1788.30 and 1788.33 do not expressly provide a debtor with a right to a jury trial and do not contain provisions prohibiting a waiver of such rights. See Cal. Civ. Code §§ 1788.30, 1788.33.

Additionally, 9 U.S.C. § 2 permits arbitration agreements to be declared unenforceable "upon such grounds as exist in law or in equity for the revocation of any contract." AT&T Mobility LLC v. Conception, 131 S.Ct. 1740, 1744 (2011) (citing 9 U.S.C. § 2). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses,

---

[5] Cal. Civ. Code § 1788.30(f) states: "Any action under this section may be brought in any appropriate court of competent jurisdiction in an individual capacity only, within one year from the date of the occurrence of the violation."

[6] Cal. Civ. Code § 1788.33 states: "Any waiver of the provisions of this title is contrary to public policy, and is void and unenforceable."

8

such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Id. (citing Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681, 687 (1996) and Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (recognizing that "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.")). Thus, "[t]o ensure that arbitration agreements are enforced according to their terms, the FAA preempts all state laws that apply of their own force to limit those agreements against the parties' will or to withdraw the power to enforce them." Cronus Invs., Inc. v. Concierge Servs., 35 Cal. 4th 376, 385 (2005).

To declare the Arbitration Agreement unenforceable, Plaintiff must assert a generally applicable contract defense, such as fraud, duress, or unconscionability. AT&T Mobility, 131 S.Ct. at 1744. Here, Plaintiff makes no substantive allegation of fraud, duress or unconscionability[7]; Plaintiff merely asserts that a

---

[7] While Plaintiff makes a statement that "Plaintiff signed the boilerplate contract of adhesion that included the subject arbitration clause" in his Opposition memorandum (Opp'n 8:25-26), Plaintiff does not provide any argument as to why the Arbitration Agreement or Loan Agreement was a contract of adhesion. An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the

1 waiver of a right to bring an individual TCPA claim in
2 a court of competent jurisdiction is against public
3 policy.  It is not entirely clear that Cal. Civ. Code §
4 1788.30 would proscribe Plaintiff from submitting his
5 claims to arbitration.  In any event, Plaintiff's
6 argument is plainly belied by the fact that courts have
7 held that Rosenthal Act claims are arbitrable.  <u>Ferrini</u>
8 <u>v. Cambece</u>, 2:12-CV-01954 TLN, 2013 WL 2421717, at *1
9 (E.D. Cal. June 3, 2013) (finding that a plaintiff's
10 Rosenthal Act claim is subject to arbitration); <u>Evans</u>
11 <u>v. Williams & Fudge, Inc.</u>, No. 12cv0746 JM(WMc), 2012
12 WL 3025164, at *2 (S.D. Cal. July 24, 2012) (same);
13 <u>Hartung v. J.D. Byrider, Inc.</u>, No.
14 1:08-cv-00960-AWI-GSA, 2008 WL 4615044, at *1 (E.D.
15 Cal. Oct. 17, 2008) <u>report and recommendation adopted</u>,
16 No. 1:08-cv-00960 AWI GSA, 2008 WL 5247714 (E.D. Cal.

---

contract or reject it." <u>Laster v. T-Mobile USA, Inc.</u>, 407 F. Supp. 2d 1181, 1187 (S.D. Cal. 2005) (citing <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 113 (2000)). Here, there are no allegations that Plaintiff lacked the opportunity to negotiate the terms of the Loan or Arbitration Agreements.  Absent any allegations to support Plaintiff's statement that he signed a contract of adhesion, the Court declines to find that Plaintiff signed a contract of adhesion.
    Further, an adhesion contract is unconscionable when *both* procedural and substantive unconscionability are present.  <u>Id.</u> (citing <u>Armendariz</u>, 24 Cal. 4th at 114).  A party challenging an arbitration agreement has the burden to prove both procedural and substantive unconsionability.  <u>Id.</u> (citing <u>Crippen v. Cent. Valley RV Outlet, Inc.</u>, 124 Cal. App. 4th 1159, 1165 (2004)). Here, Plaintiff makes no allegation that the Loan or Arbitration Agreements are procedurally or substantively unconscionable. Therefore, even if Plaintiff signed a contract of adhesion, Plaintiff fails to meet his burden of proving procedural and substantive unconscionability.

10

Dec. 17, 2008) (same).

Accordingly, because Plaintiff signed the Arbitration Agreement and manifested assent to its terms, the Court finds that a valid, enforceable agreement to arbitrate exists between the Parties.

**B.** **Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement**

Where a valid, enforceable arbitration agreement exists, courts must determine whether the claims fall within the scope of the arbitration agreement. Chiron, 207 F.3d at 1130. In so doing, the Court is cognizant of the FAA's federal policy favoring arbitration agreements:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Id. (citing Moses, 460 U.S. at 24-25). To require arbitration, Plaintiff's claims need only "touch matters" covered by the contract containing the arbitration provision. Lewis v. UBS Fin. Servs. Inc., 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011) (citing Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999)).

11

The TCPA prohibits, among other things, certain unsolicited marketing calls and the use of automatic dialers or prerecorded messages. 47 U.S.C. §§ 227(b)(1)(A), 227(b)(1)(B). Plaintiff alleges that Defendant violated the TCPA by calling him using an automatic telephone dialing system or an artificial prerecorded voice. Compl. ¶ 38.

The Rosenthal Act prohibits debt collectors from engaging in abusive, deceptive and unfair practices in connection with the collection of consumer debts. <u>Vargas v. Bank of Am., N.A.</u>, No. 12-cv-2247-L(MDD), 2013 WL 1386342, at *2 (S.D. Cal. April 4, 2013). Plaintiff alleges that Defendant violated several provisions of the Rosenthal Act, among which include (1) communicating with Plaintiff with such frequency as to be unreasonable and to constitute harassment, (2) communicating with Plaintiff in connection with the collection of the debt, knowing that Plaintiff was represented by an attorney, and (3) engaging in conduct, the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the alleged debt. Compl. ¶ 34.

The record here leaves little doubt that the dispute is arbitrable. The arbitration clause is broad and far-reaching, stating, in relevant part:

> **1. Dispute Resolution by Arbitration:** Any and all claims, controversies, or disputes arising out of or related in any way to that Truth-in-

|   |   |
|---|---|
| 1 | Lending Disclosure and Loan Agreement entered |
| 2 | into by you and us on the same date as this |
| 3 | Arbitration Agreement shall be subject to |
| 4 | binding arbitration . . . [t]his includes, |
| 5 | without limitation, (1) all issues concerning |
| 6 | the transaction in connection with which this |
| 7 | Arbitration Agreement has been executed . . . ." |

Rodriguez Decl. ¶¶ 5-6, 8, Exs. B-C.

By the explicit terms of the Arbitration Agreement, Plaintiff agreed to arbitrate "all claims, controversies, or disputes arising out of or *related in any way* to that Truth-in-Lending Disclosure and Loan Agreement." Rodriguez Decl. ¶¶ 5-6, 8, Exs. B-C (emphasis added). The Arbitration Agreement contains broad "relating to" language, and the Court accordingly reads the clause broadly. See Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013) (noting that because the arbitration agreements contain broad "relating to" language, the court accordingly reads the clauses broadly").

Plaintiff obtained a loan from Defendant pursuant to the Loan Agreement for $2,600. Rodriguez Decl. ¶¶ 5-6, Exs. B-C. As Plaintiff admits, Defendant contacted Plaintiff to collect money purportedly owed by Plaintiff on the loan. Compl. ¶ 7. Thus, Plaintiff's claims are based upon alleged calls made to his cell phone in connection with his loan. Under the terms of the Loan Agreement, Plaintiff promised to pay

back the loan[8]. Thus, Defendant's attempt to collect on that loan, and, by extension, the manner in which Defendant attempted to collect that loan, is "related to" the Loan Agreement. As such, the Court finds that Plaintiff's claims "relate to" the Loan Agreement and are within the scope of the Arbitration Agreement.

Further, the broad terms of the Arbitration Agreement likely contemplate claims related to the collection activities with regard to the loan. See Evans, 2012 WL 3025164, at *2 (finding that the language "relating to any claim or dispute arising out of the Promissory Note" is broad enough to encompass *collection efforts* related to the Promissory Note). Thus, the Court finds that Plaintiff's claims relate to his alleged failure to make payments as required by the Loan Agreement.

In his Opposition memorandum, Plaintiff relies on In re Jiffy Lube Int'l, Inc., 847 F. Supp. 2d 1253 (S.D. Cal. 2012), in which the court denied a motion to compel arbitration of a TCPA claim. In Jiffy Lube, plaintiffs signed arbitration agreements in connection with oil change services with Jiffy Lube. Id. at 1262. Consumers filed a class action alleging that Jiffy Lube sent them text messages related to the marketing of

---

[8] The Loan Agreement, states, in relevant part: "1. Promise to Pay (Loan Total (g)). In return for a loan that you receive, you promise to pay $[Principal], plus interest, to the order of Progress Financial."

future services in violation of the TCPA.  The court noted that the language of the arbitration agreement in Jiffy Lube was incredibly broad as it purported to apply to "any and all disputes" between the parties and did not limit its disputes arising from or related to the transaction or contract at issue.  Id. at 1263.

Jiffy Lube is inapposite to the case here.  Here, the Arbitration Agreement is not incredibly broad as it limits claims subject to arbitration to those that are "related in any way" to the "Truth-in-Lending Disclosure and Loan Agreement."  Rodriguez Decl. ¶ 8. Thus, the Arbitration Agreement here explicitly limits its disputes to those related to the loan that Plaintiff obtained from Defendant.  Plaintiff admits that Defendant's calls were made in connection with his loan.  See Compl. ¶ 7.  Because the calls concerned Plaintiff's borrowed loan from Defendant and Plaintiff's responsibility in paying off that loan pursuant to the Loan Agreement, the calls made to Plaintiff were related to the Loan Agreement and are within the scope of the Arbitration Agreement.

Plaintiff also argues that tort claims (such as his TCPA claim) that arise from a breach of duty created by law that is owed to others are not arbitrable.  Opp'n 6:9-11.  However, while Plaintiff's TCPA claim is a statutory tort claim, such claims are not inherently un-arbitrable.  Cayanan, 928 F. Supp. 2d at 1207-08 (citing McNamara v. Royal Bank of Scotland Grp., PLC,

No. 11-cv-2137-L(WVG), 2012 WL 5392181, at *6-7, (S.D. Cal. Nov. 5, 2012) (compelling arbitration of TCPA claim); Knutson v. Sirius XM Radio Inc., No. 12cv418 AJB (NLS), 2012 WL 1965337, at *3, (S.D. Cal. May 31, 2012) (same), and Gonzalez v. Citigroup, Inc., No. CIV. S-11-0795 LKK/GGH, 2011 WL 5884250 (E.D. Cal. Nov. 22, 2011) (same)).

Plaintiff further argues that his TCPA claim does not "relate to" the Loan Agreement because it is independent from any breach of and can be maintained without reference to the Loan Agreement. Opp'n 8:13-23.

When a tort claim constitutes an "independent wrong from any breach" of the contract, it "does not require interpretation of the contract and is not arbitrable." Cape v. Flattery Ltd. v. Titan Maritime LLC, 647 F.3d 914, 922 (9th Cir. 2011) (citing Tracer Research Corp. v. Nat'l Envtl. Servs. Co., 42 F.3d 1292, 1295 (9th Cir. 1994)). Here, the Court finds that Plaintiff's TCPA claim is not an "independent wrong" from the breach of the Loan Agreement. The Arbitration Agreement states that claims, controversies or disputes, which include "the *transaction* in connection with which this Arbitration Agreement has been executed," are subject to arbitration. Rodriguez Decl. ¶¶ 5-6, 8, Exs. B-C. When applying for a loan from Defendant, Plaintiff signed a Loan Agreement, Arbitration Agreement, and Consent Agreement. Id. at

¶¶ 5-6, Exs. B-C.  The Consent Agreement provides in relevant part that: "[Plaintiff] agree[s] that [Plaintiff] will accept calls, SMS text messages, e-mails and other electronic communications from [Defendant] regarding your loan application, your loan payments, the collection of your loan account, promotions and other important communications."  Id. at ¶ 9, Exs. B-C.  Therefore, the determination of Plaintiff's TCPA claim arises directly from and relates to his loan from Defendant and necessarily requires interpretation of the Loan Agreement and related Consent Agreement.  As such, the Court finds that Plaintiff's TCPA claim does not constitute an independent wrong from any breach of the Agreements and is arbitrable.

In light of the broad language in the Arbitration Agreement, and taking into account the liberal federal policy favoring arbitration agreements, the Court finds that Plaintiff's claims arise directly from and relate to Plaintiff's loan with Defendant, and therefore fall within the scope of the Arbitration Agreement. Therefore, the Court **GRANTS** Defendant's Motion to Compel Arbitration.

Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  Lewis, 818 F. Supp. 2d at 1169 (citing 9

U.S.C. § 3). The Ninth Circuit, however, has held that courts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement. Id. (citing Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988)). Because the claims here are subject to arbitration, dismissal is appropriate. Therefore, the Court **DISMISSES** this action **with prejudice**.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **DISMISSES** this Action **with prejudice**. The Court also **DENIES as moot** Defendant's Request for Judicial Notice [24].

**IT IS SO ORDERED.**

DATED: May 9, 2014

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge